## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **KIVETTE SAMS, FELICIA MARTIN, MARGEREA WRIGHT, PRISCILLA JACKSON, VICKIE OSIFESO, and TRINA HARICE,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION NO. 5:20-cv-684** |
| **SOUTHWESTERN BELL TELEPHONE L.P., a/k/a AT&T COMMUNICATIONS OF TEXAS, LLC, a/k/a AT&T SOUTHWEST; and AT&T SERVICES, INC.,** | ) ) ) ) ) ) | **JURY DEMANDED** |
| **Defendants.** | ) | |

## ORIGINAL COMPLAINT

Plaintiffs Kivette Sams, Felicia Martin, Margerea Wright, Priscilla Jackson, Vickie Osifeso, and Trina Harice, for their Complaint against Southwestern Bell Telephone L.P. and AT&T Services, Inc. (collectively, "Defendants"), state as follows:

## SUMMARY

1.    This is an action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Plaintiffs worked for Defendants as hourly-paid, non-exempt call center employees. Plaintiffs routinely worked over 40 hours per week but were not paid for all hours worked. Pursuant to a decision, policy, or plan/practice, Defendants suffered or permitted Plaintiffs to work many hours "off-the-clock" and without compensation.

## JURISDICTION AND VENUE

2.  This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

3.  This Court has personal jurisdiction over Defendants for reasons that include:

    (a) Defendants conduct business and enter into contracts within the State of Texas and in this District, and with persons and businesses located within the State of Texas and in this District;

    (b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Texas and their employees who reside in this District, among other people;

    (c) Defendants have purposefully directed the marketing of their telephone services at residents and businesses located in the State of Texas; and

    (d) Defendants purposefully solicit Texas residents to enter into service agreements; and

    (e) Defendants operated a call center in this state and in this District, where Plaintiffs worked and where some of the transactions giving rise to this lawsuit occurred.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Texas, and the causes of action set forth herein have arisen and occurred in part in the Northern District of Texas.

## PARTIES

### i.     Plaintiffs

5.      Plaintiff Kivette Sams has worked as an employee for Defendants in this judicial district prior to the filing of this action.  A copy of Plaintiff Kivette Sams's consent form is attached hereto as part of Group Exhibit 1.

6.      Plaintiffs Felicia Martin, Margerea Wright, Priscilla Jackson, Vickie Osifeso, and Trina Harice have each worked as an employee for Defendants in this judicial district prior to the filing of this action. A copy of their consent forms are attached hereto as apart of Group Exhibit 1.

7.      Plaintiffs have been compensated as hourly-paid, non-exempt employees of Defendants in this District during the applicable FLSA statute of limitations period.

### ii.     Defendant Southwestern Bell Telephone

8.      Southwestern Bell Telephone, L.P. is a Texas limited partnership doing business as a telecommunications firm in the State of Texas and in the Southwestern United States, with over 1,000 employees. It is a wholly owned subsidiary of AT&T, Inc., and it also does business as Southwestern Bell, AT&T Communications of Texas, LLC, and AT&T Southwest. It is headquartered in Dallas, Texas.

9.      At all times prior to the filing of this Complaint through the present, Southwestern Bell Telephone, L.P. was engaged in the business of, among other things, operating call centers staffed in part by Plaintiffs in the Southwestern United States, including Dallas, Texas; Norman, Oklahoma; San Antonio, Texas; and other call centers in Defendants' Southwest region, including in Missouri, Kansas, Oklahoma, and Arkansas.

10.     Southwestern Bell Telephone, L.P. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs, and is one of three parties who are referred to as "the Company" in that collective bargaining agreement.

11.     Southwestern Bell Telephone, L.P. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union representing plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

12.     Southwestern Bell Telephone, L.P. violated the Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data; (2) the Application and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of eight minutes or less.

13.     The work performed by Plaintiffs benefitted Defendant Southwestern Bell Telephone, L.P.

14.     Southwestern Bell Telephone, L.P. employs, manages, and/or controls the coaches, supervisors, and call center managers who are responsible for the day-to-day oversight, evaluation, and review of all call center representatives' performance for the call centers at issue in this case. This includes, *inter alia,* reviewing job performance, administering discipline, and/or terminating the employment of call center representatives.

15.     Southwestern Bell Telephone, L.P. has had the power to hire and fire employees, including Plaintiffs, it supervised and controlled employee work schedules or conditions of payments for those employees, it determined the rate and method of payment for work

performed by those employees, and it maintained employment records for those employees, as specifically set forth in the "AT&T Corporate Code of Conduct", a written directive issued by AT&T through Southwestern Bell Telephone, L.P. to all AT&T employees and through other human resources and personnel directives issued nationwide.

16.     At all relevant times, Southwestern Bell Telephone, L.P. exercised control over and was the "employer" and/or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

### iii.     Defendant AT&T Services, Inc.

17.     AT&T Services, Inc. is a Delaware corporation, formerly known as "SBC Services, Inc."

18.     AT&T Services, Inc. provides transaction processing services, billing, payroll, accounts payable, customer remittance, fixed assets record keeping, GL processing, personnel management and specialized services to the parent companies and to related affiliates, including Defendant Southwestern Bell Telephone, L.P., in this judicial district.

19.     AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures as well as termination criteria.

20.     AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents plaintiffs. Such terms include, *inter alia*, job duties, progressive discipline, and termination clauses contained within the Collective Bargaining Agreement.

**ORIGINAL COMPLAINT**

21.     AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team," who were charged with recording attendance, job performance, discipline, and termination at each of the call centers at issue in this lawsuit.

22.     AT&T Services, Inc. has processed the payroll for Plaintiffs and issued them payroll checks.

23.     AT&T Services, Inc. has had the power to hire and fire employees, including Plaintiffs, it has supervised and controlled employee work schedules or conditions of payments for those employees, it has calculated and determined the rate and method of payment for work performed by those employees, and it has maintained employment records for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

24.     AT&T Services, Inc. is and has been a party and signatory to a certain collective bargaining agreement with Plaintiffs and is one of three parties referred to as "the Company" in that collective bargaining agreement.

25.     AT&T Services, Inc. is reflected as the employer on Plaintiffs' statement of earnings, taxes and allotments (i.e., pay stubs).

26.     At all relevant times, AT&T Services, Inc. exercised control over and was the "employer" or a "joint employer" of Plaintiffs, as the term "Employer" is defined under the FLSA.

27.     AT&T Services, Inc. violated the AT&T Corporate Code of Conduct by failing to report the hours worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the call queue Login/Logout data; (2) the Application

and Operative System Platform Login/Logout data; and (3) Incidental Overtime Requests of eight minutes or less.

28.    The work performed by Plaintiffs benefitted Defendant AT&T Services, Inc.

29.    Defendants directed, implemented, and controlled the policies and practices at issue in this lawsuit. Further, Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice of failing to pay lawful compensation to Plaintiffs ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the class members.

## **FACTUAL BACKGROUND**

30.    Plaintiffs have worked as call center employees for Defendants, along with thousands of other call center employees employed by Defendants, during the relevant limitations period prior to the filing of this action.

31.    Plaintiffs' and their coworkers' duties include speaking via telephone with customers, former customers, and potential customers of Defendants' internet, television, telephone, and related services.

32.    Plaintiffs are typically scheduled to work for forty (40) hours per week.

33.    Plaintiffs and their coworkers arrive for work in the morning and typically begin the process of logging on to various computer programs they use in their duties, which can take several minutes.

34.    Plaintiffs and their coworkers are expected by their employers to be ready and available to receive telephone calls at the beginning of their scheduled shift time by turning on their mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

35.     Defendants' supervisors carefully monitor Plaintiffs and their coworkers to ensure they are ready and available to begin work and to receive calls at the beginning of their scheduled shift times.

36.     Plaintiffs are provided a "grace period" within which they must be ready and available to take calls. If they are not ready and available within that time, Defendants consider them "late" for work.

37.     Even though Plaintiffs are provided a grace period, this period is insufficient to capture all the time Plaintiffs spend getting to ready and available status, so Plaintiffs must necessarily perform uncompensated work prior to the start of their shifts. This time is tracked by Defendants' operating system; however, Defendants have failed to require their Force Team members to use that data for compensation and payroll purposes.

38.     Defendants have required Plaintiffs to log out of their ready and available status for both their two fifteen-minute breaks and their meal break, each shift that they work.

39.     The end-of-day log-out process consists of operating certain computer programs that log the actual time that Plaintiffs leave their ready and available status and that log the actual time of day Plaintiffs return to their ready and available status. Also logged is the actual time that the programs close and the systems log out Plaintiffs after they leave ready and available status.

40.     Plaintiffs receive telephone calls from Defendants' customers who typically express various questions and concerns about the customers' service, including equipment issues, and finances, upgrading or downgrading service, among others. Each call typically lasts an average of 5-30 minutes; as a result, Plaintiffs are frequently still

involved with a call with one of Defendants' customers at the end of their scheduled shift time.

41.    Nonetheless, Defendants prohibit Plaintiffs from disconnecting a customer call before the call is completed, even when that call extends beyond the end of Plaintiffs' scheduled shift. Instead, Defendants require Plaintiffs to satisfactorily complete the call before disconnecting.

42.    After Plaintiffs have finished receiving calls for the day, they typically need to perform additional follow-up work in Defendants' other computer systems and applications to complete customer orders and requests received earlier during the course of their work ("after-call work"). This work is typically performed after the end time of their scheduled shift.

43.    Plaintiffs frequently perform work for Defendants during their break and meal periods, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors, reviewing call notes from previous call sessions, and performing after-call work.

44.    To be compensated by Defendants for time worked outside their scheduled shift time (as required by law), Plaintiffs must make an affirmative request to a management group controlled by Defendants called the "Force Team," setting forth the amount of time worked outside of their scheduled shift time.

45.    Defendants maintain and control a software program called IEX, which is the shared software platform that manages the work schedules of all call center representatives nationwide, including Plaintiffs.

46. Defendants utilize the schedules in the IEX software platform to pay call center representatives according to their *scheduled* shift time—not according to their *actual* time worked—unless an "exception" to the schedule is entered into the IEX software by a member of the Force Team.

47. Plaintiffs are not given automatic direct access to their online IEX schedules in order to directly enter their overtime worked as exception into the system.

48. Instead, the exception request is required to be submitted to clerks on the Force Team, either by email, instant message, on paper, or in some other manner.

49. However, if no exception request is submitted, then Plaintiffs are not paid for time worked beyond their scheduled shifts—even though Defendants can literally see them working, they have records of that work, or are otherwise fully aware of the fact and/or the time that Plaintiffs have worked beyond this additional time without being compensated for it.

50. Plaintiffs and the other employees are only paid for time outside their scheduled shift, including overtime, if they complete and submit this exception request, even though Defendants have contemporaneous electronic records of the *actual* times that Plaintiffs log in and out of the phone and operating systems and related software programs.

51. Plaintiffs and the other employees have been required to request to be paid for all time worked beyond their scheduled shift, or else they were not paid for that time worked, throughout the relevant time.

52. Defendants are aware that Plaintiffs regularly worked incidental overtime that was unpaid.

53.    Defendants also subject all call center associates in the United States who receive incoming customer calls as part of their job duties to a complex system of job performance criteria, commonly referred to by the employees as "Adherence." One aspect of that job performance criteria is how closely those employees adhere their work hours to their scheduled shift hours. If a call center associate reports incidental overtime or trade time—a/k/a time worked outside their scheduled shifts hours—that reporting negatively impacts their overall job performance review and can also lead to their losing the opportunity to apply for or obtain higher-paying evening hours schedules, job transfer requests, promotions, and can even lead to termination of employment.

54.    At times, Plaintiffs have not reported incidental overtime worked before their shift, after their shift and/or during their meal period because doing so would negatively impact their job performance review and because Defendants were aware of the time worked.

55.    The AT&T Code of Business Conduct ("COBC") is drafted and distributed by Defendants' parent entity AT&T, Inc., and compliance with its provisions is mandatory for Defendants and for their employees. The COBC requires all supervisors of Plaintiffs to ensure that all time worked by Defendants' employees is recorded and reported for pay purposes—even if the employee did not request and/or failed to receive approval to work the additional time. Managers are prohibited from permitting employees to violate this guideline.

56.    The COBC requires all supervisors of the Plaintiffs to review and verify the accuracy of all time reported by Plaintiffs in the pay period and by its deadline to input changes for the pay period. Managers are prohibited from permitting employees to violate this guideline.

**ORIGINAL COMPLAINT**                                                                                   **- 11 -**

57. The COBC identifies various examples of work that must be reported by Supervisors and paid to Plaintiffs, including without limitation: (1) Preparatory work before the start of the shift that is necessary for your job; (2) Cleanup work after the end of a shift, including verifying or correcting information entered in company systems; (3) Performing work during meal periods; and (4) Performing work before or after scheduled hours.

### *Defendants' Practice of Rounding Clocked Time*

58. While working for Defendants during the relevant time period, Plaintiffs would regularly arrive for work and begin working before the start time of their scheduled shift.

59. Plaintiffs regularly performed work for Defendants during their unpaid meal periods.

60. Plaintiffs regularly performed work after the end time of their scheduled shifts, including but not limited to finishing calls in which they were involved at the end of their scheduled shift.

61. Defendants utilize certain software developed by VMWare that captures and records the precise time of day and date that Plaintiffs would log out from their assigned computer terminal at the end of their workday; and Defendants have retained a copy of such recording for each Plaintiffs.

62. Defendants have had other records of the actual time when Plaintiffs and their coworkers actually finished calls in which they were involved at the time of and after the end of their scheduled shift time, but Defendants did not use those records for calculating Plaintiffs' and their coworkers' compensation. Instead, Defendants rounded the time from the actual time worked to the scheduled shift time, and the scheduled shift times—not the actual times—were then used to calculate and process payroll for Plaintiffs.

63.  Plaintiffs were regularly not paid for all time worked, including for work performed prior to the start time of their scheduled shift, work performed during meal periods, and work performed after the end time of their scheduled shift.

64.  Plaintiffs estimate that they each often worked approximately a minimum of one or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs have worked is in the exclusive possession and control of Defendants.

65.  Defendants' practice of rounding and failing to pay for time worked pre-shift and post-shift and instead rounding the time for which it would compensate Plaintiffs to their scheduled shift time is wide-spread and has occurred for a significant period of time during the last relevant limitations period.

66.  All unscheduled events recorded in Plaintiffs' IEX icon-based schedules are converted into computer code compatible with AT&T's central payroll processing software, called eLink, for the purpose of generating nationwide batched payroll, by an intermediary computer program called TVI.

67.  The TVI program automatically rounds all unscheduled IEX events that fall outside of Plaintiffs' scheduled shift hours to zero for purposes of payroll processing and batching.

68.  The actual time worked by Plaintiffs prior to and after their scheduled shift times can be determined from the log-in/-out records themselves, which are required to be kept by Defendants pursuant to 29 U.S.C. §211(c), 29 C.F.R. § 516, and the FLSA generally.

69.  At various times and in various locations across the country, AT&T has directed Force Team members to record the last logout from the last unscheduled event recorded in call center associate IEX schedules to calculate the employees' pay, regardless of whether

those logouts fell outside of scheduled shift hours, and without enforcing the self-reporting timekeeping requirement for those call center associates.

### COUNT I: FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

71.   Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs as if fully set forth in this Count.

72.   Plaintiffs bring this count pursuant to 29 U.S.C. § 216(b) to recover unpaid wages, liquidated damages, attorneys' fees and costs, and other damages owed.

73.   Plaintiffs are or were hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers during the relevant time period and whose daily log-in and log-out time was rounded and/or unpaid as described above.

74.   Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

75.   Section 207(a)(1) of the FLSA requires that an employee must be paid overtime equal to at least one-and-one-half times the employee's regular rate of pay for all hours worked in excess of 40 hours per week.

76.   Plaintiffs were not paid for all hours worked in excess of 40 in a week, in violation of the FLSA.

77.   Plaintiffs also were not paid a *bona fide* regular rate of pay for straight time hours worked when those hours were not tracked and accounted for, but were worked by these individuals.

78.   While working for Defendants, Plaintiffs were subject to the control of Defendants and engaged in activities that were undertaken not for Plaintiffs own convenience, but that

were necessary for the performance of their duties for Defendants and that were integral and indispensable to their principal activities. Despite this, Plaintiffs were regularly permitted or required to work "off the clock" as set forth herein, time for which they are entitled to be compensated.

79.   Defendants required and/or permitted Plaintiffs to work off the clock prior to the beginning of the call-center employee's scheduled shift and remain on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and "off the clock," in the interest of the employer.

80.   Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay overtime wages for all overtime work performed by Plaintiffs.

81.   Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c) and in 29 C.F.R. § 516.2(7)-(9).

82.   At all times relevant hereto, the action of Defendants to not pay overtime pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required overtime pay for overtime work and required them to maintain true and accurate records. Defendants received complaints from Plaintiffs regarding their failure to properly compensate them for all hours worked but failed to redress these concerns, necessitating this lawsuit.

83.   Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice described above to the detriment of Plaintiffs.

84.   As a direct and proximate result thereof, Plaintiffs are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

85.    Plaintiffs request that the Court award the unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

### **RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for an Order of judgment against Defendants, jointly and severally, as follows:

A.    Finding Defendants liable for unpaid wages due to Plaintiffs (and those who may join in this action) and for liquidated damages in an amount equal to the unpaid wages found due to Plaintiffs (and those who may join the suit);

B.    For an Order awarding Plaintiffs (and those who may join in this action) the costs of this action;

C.    For an Order awarding Plaintiffs (and those who may join in this action) attorneys' fees;

D.    For and Order awarding Plaintiffs (and those who may join in this action) pre-judgment and post-judgment interest at the highest rates allowed by law; and

E.    For an Order granting such other and further relief as may be necessary and appropriate.

TRIAL BY JURY DEMANDED

Respectfully submitted,

/s/ J. Derek Braziel
**J. Derek Braziel**
Texas Bar No. 00793380
jdbraziel@l-b-law.com
**Travis Gasper**
Texas Bar No. 24096881
gasper@l-b-law.com
**BRAZIEL DIXON, LLP**
1910 Pacific Avenue, Suite 12000
Dallas, Texas 75201
(214) 749-1400 phone
(214) 749-1010 fax

**GLEN J. DUNN, JR.**
Illinois Bar No. 6274852
GDunn@GJDlaw.com
Glen J. Dunn & Associates, Ltd. 121
West Wacker Drive, Suite 1414
Chicago, IL 60601
Tel: 312.546.5056
Fax: 312.546.5058

**ATTORNEYS FOR PLAINTIFFS**